et al. For our argument, that's between 15 minutes and one second. 15 minutes to be shared by the defendants. Good morning, Your Honors. David Zak for Appellant W J ONeil Company. I'd like to reserve 5 minutes for rebuttal, please. You may. This appeal presents a narrow and specific question under Michigan res judicata law. Specifically, whether the same party's requirement for res judicata applies when the parties to this appeal have been participating previously in a case where you had the W J ONeil Company and either one of the two appellees. These are two separate cases. And then, does Michigan res judicata law apply when W J ONeil Company has never asserted a formal claim in the arbitration proceeding against either one of the two appellees? Here's the problem or the concern, I guess, the question that I have. The narrower we make the issue, and I think you've accurately described a very narrow issue that's sort of interesting academically. If we put that aside for just a second, you're asking for a redo of what was essentially a 42-day arbitration proceeding or something like that, where it just, from a logical standpoint, seems like everybody was there. And you want a redo on exactly the same issues that were discussed before. I'll bet you get to the parties in a little different way. The issue is raised as to a party through indemnification in the first proceeding, and it would be raised directly in this proceeding. But otherwise, it looks like the issues are identical. So what's, why, is that right? And if it's, if it is right, why would you, why would we want to do it again? Well, most of the evidence would be the same, but O'Neill's always wanted to assert its tort claims against the two appellees. There's a consequential damages limitation in the contract between W.J. O'Neill and Barton Mallow that severely limited the amount of damages that it could have recovered, and there... Well, it didn't seem to me on, it didn't seem to me in the briefing, although I may just have missed it, which is certainly possible, that you've ever described to us in the pleadings exactly what claim you want to make now that you couldn't make, or maybe a variation of that would be same claim, but now you want to make a claim for additional damages or something. Well, these are tort claims, and there's a breach of contract claim that O'Neill brought against Barton Mallow, but O'Neill has tort claims, tortious interference with the contract, negligence, that he would like to bring against, and has always wanted to bring, has been trying to bring against the two appellees, and they're just different claims. Did you give any thought to asserting them in the arbitration? Here's the thing. O'Neill was faulted for not bringing the claims by the district court below, for not bringing the claims against the two appellees in the arbitration, but there's no mechanism for even bringing such claims against the appellees. I understand. Well, there's no mechanism. That is, you could presumably have filed something before the arbitrator, and one would think that in reality, and I'll ask your colleagues, they would have said, we've got no arbitration agreement with you. Go away. But nevertheless, as a matter of tactical strategizing, one might have thought about it, and I just wondered, did you think about it and either say, oh, that's so silly, they'll never agree, or was there some downside, some detriment to even trying to file that? Well, this is a AAA arbitration. The AAA rules say, look, if you want to bring an arbitration demand against a party, you fill out a form. There's a form you fill out. And it says you also have to attach the arbitration agreement. I'm sorry? You have to attach the arbitration agreement. And so there was not even here a mechanism. I think that's rule. So you're saying that it's not just file any old thing and let them defend, that it would be invalid on its face because you couldn't attach an arbitration agreement? Indeed. And this is an arbitration to AAA construction rules. I believe it's rule 4A sub 2. Let me follow up on that. I understand in the initial request for arbitration, whoever filed it, what you're pointing out may have been a limitation that would have prevented that initially. But once the case gets going, it seems to me your claim here would be a lot stronger had you then sought to inject these issues, shall we say, into the arbitration that was properly filed. Because in res judicata, we're looking at what was brought or what could have been brought. Sure. It might have some emotional appeal, but again, these were two separate cases that were consolidated for arbitration. In the case in which O'Neill was a party, it was O'Neill and Barton Mallow. And there's a Michigan case on point, and that's Duncan v. State Highway Commission. And that case actually involved two cases that were consolidated in Michigan State Court. But the claims that you had against Barton Mallow were very similar, were they not, to the claims you would have had against the other two defendants in terms of design and problems of that nature? Certain aspects of the claim hinged on the design. Certain aspects hinged on the administration of the contract by Barton Mallow. They were substantially similar in nature. It's possible that if we were to go to trial in the federal court on the claims against these appellees, they might try to make other arguments under other areas of law that they have certain defenses or offsets. They might argue that. I'm sorry to interrupt. I have a question that you spend very little time on in your briefs. And that's that really bringing these claims in arbitration is not the same, I don't know, from a due process standard or otherwise, as bringing these claims in a court of competent jurisdiction where you could perhaps get a jury trial or a trial before a judge. And that, you know, arbitration is a matter of consent. And you should be permitted to have your day in court, not your day in arbitration. But you spend very little time in your briefing on that. That's precisely correct, though. As far as the briefing, we didn't mean to minimize the importance of the constitutional right to a jury trial on these claims that O'Neill is seeking to assert against the appellees in the federal court. These TOR claims are jury-triable claims. There's no waiver of the constitutional right to jury trial for any of those claims. Certainly, parties are free to waive their right to a jury trial through an arbitration agreement. But that never occurred here. And the district court recognized that O'Neill and the appellees have not entered into such an agreement. And actually went on to say that O'Neill could not have been compelled to bring these claims against the appellees. And yet went on to say that it could have brought those claims and should have. But I want to make no mistake, the Michigan rule of res judicata is very broad. And it says that once you bring a claim, a formal claim against a party, then you are required to bring not only that claim. Res judicata doesn't apply to just that claim, but any claim that you could have brought that arises out of that same transaction or occurrence. But it doesn't follow from that broad principle that res judicata applies to claims that you never brought or could not have even brought. Certainly, O'Neill could not have brought tort claims against the appellees in a breach of contract claim against Barton Mallow. They could not have brought those tort claims in the arbitration proceeding against Barton Mallow. Well, when you say could not have brought, again, isn't that dependent on the fact that there's no arbitration agreement between the two of you, that if there's an arbitration agreement between A and B, unless it specifically excludes, let's say, tort claims, you could have brought them. Indeed. And O'Neill actually resisted the consolidation of the arbitration just as a procedural matter. So that's something that I think is worth noting. As far as the res judicata not applying between co-defendants or co-parties, this case is even further removed from that kind of situation where you have a co-party because O'Neill was not even truly a co-party with either of the appellees in the arbitration. It would not have brought a cross-claim if it could have. I'll ask them as well. The briefing keeps using the term, I think maybe both sides use the term about cross-claim, but if there had been a claim between them, it would either be some kind of either new claim or counter-claim because when I went to law school, cross-claims were only between people on the same side. Right. So I'm not even sure what you would call it, but the Duncan case, I think, is important. We can look at that, counsel. Your time has expired if you want to save your rebuttal time. Thank you, Your Honors. Good morning, Your Honors. Michelle Thomas on behalf of Shapley, Balfrinch, Richardson, and Abbott, and since I only have eight minutes, I'm going to call them SBRA, save a little time. I'd like to respond to some of the questions that the panel has posed, but before that, I would like to emphasize that while counsel for O'Neill has premises on a very narrow legal issue, dwelling on the fact that there was no formal claim, he's missing the entire point of the doctrine of res judicata as broadly applied in Michigan, and that is because the record, the actual facts here establish that not only could O'Neill have asserted the claims that they want to against SBRA and SSR, they did. The entire point of view. The emphasis this morning is the distinction between breach of contract claims and tort claims. So how would he have injected the tort claims into the arbitration proceedings on the contract claims, and then assuming you can answer that, and then how do you get to assert them against your client? Well, first, under Michigan's broad doctrine of res judicata, the identity of a legal theory is irrelevant. It's whether the core facts, the essential controlling transaction, are they identical or substantially similar, and in this case, they were absolutely identical. It's breach of contract, misrepresentation. It doesn't make any sense to apply res judicata if it's true in fact that you can't arbitrate tort claims in an arbitration, and I would have to say I don't have any idea whether you can or you can't. Of course you can, because that's the point of arbitration, especially in the construction setting. They're not limited to breach of contract theories. The owner has a tort theory against a design professional. They have a tort theory against a general contractor. Were there any tort claims asserted under the various arbitration agreements here? Absolutely, because their entire theory in this case was that Barton Mallow breached its contract because it permitted negligent design of the cardiovascular mechanical systems, and it misrepresented that the plans and specs were not defective. Those are tort theories. All their expert testimony was not to the effect that Barton Mallow breached their contract. Their expert testimony, which, by the way, is not required in a breach of contract action, but they brought in a slew of experts that all said, oh, boy, these engineers, these architects, they violated the standard of practice. That's tort. That's not breach of contract. That was their case. That was their entire case. I think we go on at length in our briefs where we say we're not making this up. We're not saying what our arguments were in arbitration. We're pointing out that O'Neill's very theory was that the design team was negligent. Are there any tort claims being asserted in this federal court action that were not tort claims being addressed in the arbitration? No. They're identical. Their theory of breach of the standard of practice and misrepresentation, which are their two theories in this federal case, their two tort theories, were the very grounds on which they were proceeding in arbitration. They would not have won had they not proceeded that. They did win, and the arbitrators specifically found that there was a problem with the designs. Was there any limitation on the damages that you could get arising out of those tort theories because it arose in arbitration that wouldn't be true in this federal court case? No. They specifically pursued consequential damages. The arbitrators found that while the contract with Barton Mallow may have excluded it, they went on to find that O'Neill didn't prove it. And by the way, they tried. They brought in substantial evidence and expert testimony specifically, directly, and dramatically on the issue of consequential damages. They didn't prove their case. In terms of the general race judicata theory, in your view, would this apply both ways? That is, if you decided to sue them now on something having to do with this whole mess, would you be precluded because you could have brought them against them in the arbitration as a counterclaim? Yes, because, again, we have substantial identity of the parties, and we have not even just similar facts. We have identical facts. Their complaint in this case reads just like their demand arbitration. The proofs they're going to need to prevail in this case are identical to what they presented in arbitration. This case has been going on since 2006. If they had presented it in arbitration, would you have objected? Again, O'Neill admits both in arbitration and in their brief. The respondents in arbitration, which was Barton Mallow, U of M, us, and SSR, we presented a united defense. Well, you're united, but when you said respondents, you weren't respondents to them. You were respondents up the line to the university, right? Except, in fact, Judge Boggs, we were respondents to them. They acknowledged that. That was our strategy. And the arbitrators recognized that, too. I understand the strategy. I just want to say, can you represent to me that if they had filed a claim in the arbitration, denominated as O'Neill versus either you or your colleague, SSBR, would you have said fine, or would you have said we have no obligation to arbitrate? We could not have objected, and they should have done it, because all the contracts in this case required all parties to participate. When you say the contracts required all parties, help me with that in the sense that they're not a party to your contract with the university, right? No, but they were the subcontractor of Barton Mallow. Their contract, incorporated by reference, Barton Mallow's contract with the University of Michigan, and that contract specifically requires all parties to participate if you are present in the arbitration. In other words, the point of these... Last part, just help me there again. You're referring to the contract between the university and Mallow, or the contract between Mallow and O'Neill? Both. And, in fact, the contract between U of M and SBRA, and the contract between SBRA and SSR. When you say all parties, all parties to what? The construction project. Project. Yes. If you were involved in the construction project, which they're all contract relationships, okay? They're separate. They're subcontractors. We may not have had a direct contractual relationship with O'Neill, but that's irrelevant, because O'Neill contractually agreed to make sure that anybody involved in the claims at arbitration came to arbitration. And, again, O'Neill's contract with Barton Mallow, specifically incorporated by reference, the University of Michigan's contract with Barton Mallow, and in that contract between U of M and Barton Mallow, all parties are required to participate if asked. Well, we weren't just asked. We were brought in. Obviously, in this case, each party was objecting to the merits of the other party's claims. I get that. But were there any objections ever raised to the fact that the claims themselves were being raised, they shouldn't have been in arbitration, they were tort versus contract? No, not during arbitration. I mean, O'Neill did not want to arbitrate, obviously. They first filed a civil action against SBRA and Barton Mallow, and the state circuit court immediately dismissed the claims against Barton Mallow based on the arbitration agreement. This case should have started in arbitration from the get-go. O'Neill did not want it. Obviously, they wanted to split their claims and hedge their bets, try to get more money elsewhere. But the bottom line is when we started in arbitration, when it was finally consolidated over all their objections, at that point in time, I think Judge Bogg, you put your finger on it, they had no choice. At that point, everybody's there and everybody's participating. And for them to stand here and say that there wasn't an actual controversy between O'Neill and SBRA is facetious at best. I think your time has expired unless my colleagues have more questions. Thank you.  May it please the Court, good morning. My name is Jeff Girish on behalf of Smith, Seckman & Reid. I had planned to start off with a point that's right along the lines of your question at the beginning, Judge McKeague, which is it's amazing how many cases there are on res judicata because the elements have a broad sweep. They bring in a lot of claims that are barred, and that basically raises the notion that sometimes you get a case where it kind of hurts the conscience to say that it applies. This is the opposite. Even if you thought it was a close call whether the elements are met here, this is a case that cries out for a ruling that it's barred by res judicata because it is exactly the same case that they're trying to redo. And there's no doubt that they tried to keep this out. They tried from the beginning to have a second bite at the apple by filing suit in Washtenaw County against my client and my colleague's client, which, of course, proves that we are adversaries and we were adversaries in the arbitration. And, Judge Boggs, to answer your question, there's no question we would have agreed to arbitrate. If they had tried to arbitrate the claims against us, if they had filed a formal paper saying we want to arbitrate this claim against you, SSR, we would have agreed. Well, the question is would you have been required? In my mind, the question is under these agreements, as I guess they've been described by your co-counsel, would you have been required to arbitrate the way these agreements apparently incorporate one another in various aspects? If O'Neill had brought claims against Smith in the arbitration, is it your position that you would have been required, you, Smith, to arbitrate those claims? No. I don't think we would have been required to do so. I could be mistaken in what the contracts say, but we didn't have a contract with them with an arbitration provision. And this is what they're arguing. They're saying we weren't compelled to arbitrate, and I think I agree with that. You weren't compelled, but you could have arbitrated it, and we would have agreed to it. You're saying you would have agreed, but that's your representation, and that's fine, but there's nothing in the record that would reflect that you would have agreed, I assume. I'm not sure about that. I think there is. If you look at the Washtenaw County record, and I don't have that record memorized, but in the Washtenaw case where they sued us, we were saying all along this whole thing is being arbitrated. Their claim as against us, to the extent they have one, is being arbitrated. This is the subject of it. The Washtenaw Circuit case should be dismissed, and they're not going to get a second bite at the apple down the road because they're de facto arbitrating this claim as against us. Are any of those papers in this record, or are they only in Washtenaw? They are in this record. They are in this record, yes. So you're basically saying even though you wouldn't have been required necessarily to do so, and it seems to me we would be remiss in just simply relying upon somebody after the fact saying, oh, sure, we would have participated because who knows. But you're saying under race judicata, even though you weren't required to participate, they were at least required to seek to add that in. I'm saying that... May have been successful, may not, but the absence of trying to do it is what triggers the under race judicata. Not quite. I'm saying they could have tried. They could have tried. And the fact, so I guess you're right. I guess I do agree with you. They could have filed... The absence of could have tried. It's the absence of trying that triggers the doctor. Yes, that's right. I mean, the point is could it, this... Zach says, wait a minute, we're arbitrating contract claims, and I want to bring tort claims, and your co-counsel, Ms. Thomas, says the whole case turned on torts that led to, I guess, the breach of contract. Sure. Do you agree with that? Do you have any different take on that? Only in the sense that I don't know what the formal paper said in terms of this is the title of our claim being arbitrated. It might have been limited to contract claims on the papers, but in matter of fact as to how it was arbitrated, they pursued their theory from the outset was that the design was negligent, the designers was negligent, and this caused our damages. And so as a de facto matter, the tort claims were arbitrated. I can't say that they were, the formal papers that they filed said that that's what was being arbitrated, but in fact that's what was being arbitrated. And to the extent that they wanted to file a separate paper against us, we've said from the very beginning they could have and should have, and the fact that they could have is dispositive. Can I ask you a question about the state court proceeding? So there was a stipulated dismissal of the Washtenaw Circuit Court cases, I recall. I think so, right. And I have looked at those documents at some point, but I don't recall seeing in them any indication that it was contemplated that all of the parties would participate in an arbitration, and I'm not sure if that's what you're suggesting. I thought it was contemplated that the judge said, no, there's an arbitration agreement between O'Neill and Barton Mallow, and that needs to be arbitrated, and then subsequently that went to arbitration. But maybe you shed some light on this for me. I'll try. That was the trial judge's understanding at the outset, and he originally dismissed Barton Mallow from the case. But then as time went by and nothing happened in the Washtenaw Circuit case and the arbitration geared up in earnest and was being arbitrated day after day and the claims were being asserted against our clients, the Washtenaw judge figured out this whole thing is being arbitrated. This Circuit Court case should be dismissed because you're effectively pursuing your claims as against these guys in the arbitration. And so that's why it was dismissed later on. At the beginning, though, it wasn't because their contract was with Barton Mallow. Is there anything that would indicate that parties were thinking that claims that O'Neill might have against Smith and Shepley would be subject to the arbitration as well? There being no arbitration agreement between O'Neill and your client? Yes. Everyone assumed that the whole thing was being arbitrated once everyone was brought in. When U of M and Barton Mallow brought in her client and my client, we were there prepared to arbitrate, and we did. And we defended our claims. We defended our defenses. Their claim was that we were negligent. We defended it. And this is what this whole subject of the arbitration was. That's what was the topic of it for many, many days. And I want to make sure there's one point I really wanted to make, because I wish I would have made this in my brief, and I don't know how I missed it. This is on the Privy's argument. There's a very important statement in the City of Berkeley v. Peterson case, and this is 672 Northwest 2nd. I'm sorry, Peterson v. Berkeley. 672 Northwest 2nd, 351, defines privies to include the situation of an indemnitor and indemnity. That's settled law in terms of what constitutes a privy. And the reason that's important, that is the case here. So even if we were to lose on this same party's requirement, clearly we were in privy with Barton Mallow, because although we weren't a direct indemnity, the whole thing was based on indemnification. And that is a recognized situation of privy, which is why we were privies to Barton Mallow. But the only other point I would make is, and I started off by saying it's amazing how many cases are on race judicata, as my colleague's supplemental paper noted. With all the cases, they've never cited a single case from any jurisdiction that's on point. And there aren't any. There are two that are on point. As you say, there are zillions on race judicata. The interaction between arbitrations and courts, this is the first one I've seen. I'm sure it's not the first one that exists. Let me ask you a sort of final question. Could they, in the arbitration as it stood, could they have gotten an award against you? Could the arbitrator at the end of this proceeding have said, we decide that your clients or your clients are really the bad guys here, so please pay O'Neill $2 million? I think so. But it might have been in the sense of an award against Barton Mallow that follows all the way down to us. Because that's the way it was set up. So I don't know if they could have gotten an award directly against SSR in favor of O'Neill. But they could have for sure against Barton Mallow down through. In fact, they did. And they did. Right. They recovered their damages. Exactly. Any other questions, colleagues? Is there any theory that you can think of that under which there's a claim they couldn't make against Barton, but they could make against you? Because your answer to Judge Boggs' question was, well, they'd really have to make their claim. They'd have to get recovery against Barton, and then Barton would seek recovery from you. In the arbitration. In the arbitration. So are there any claims that that process excludes that, in theory, they're now trying to assert directly against you that you're aware of? No, because they sought all of their ---- You've seen what they're seeking against you. Yes. They seek all those same things indirectly against you through Barton. Exactly. All right. Exactly. And just one of the ---- You've answered the question. You've answered the question. Okay, thank you. Okay, thank you. You have five minutes for rebuttal. Your Honors, we've heard from Brother Counsel that their characterization of the rule is it's the absence of trying that triggers the res judicata doctrine. But if we think about such a rule, it's inherently unfair and unconstitutional in the arbitration context when you don't have a jury trial. We know that O'Neill wanted to have a jury trial and, in fact, brought these claims originally against the Appellees in State Circuit Court. It would be unfair if they were to be required to try to pursue claims in arbitration when it requires waiver of a constitutional right. And we know that's not a correct statement of Michigan law. Well, again, isn't it in the absence of a contract? If you were required to arbitrate, then you would have been required to try to bring any claim in or lose it regardless of your jury trial rights. Absolutely. And when these claims were originally brought in the State Circuit Court, it was Barton Mallow that was dismissed in favor of arbitration, but it wasn't the other two parties. Even if they were required to arbitrate those claims, parties can waive the right to invoke an arbitration agreement through waiver if they don't raise the issue of arbitration timely. So even if it were a particular defense, it was never raised. It is disingenuous for them to say now, oh, we would have wanted to arbitrate these claims when they didn't make that argument in the State Circuit Court. Your opposing counsels say that it's possible that the claims as they were denominated in the arbitration proceeding didn't say they were tort claims versus breach of contract claims, but they argue strenuously that all the tort claims you want to bring now were addressed as torts in the arbitration proceeding. In other words, the misrepresentation, the breach of the standard of care. So what's your response to that? There was a breach of contract claim that O'Neill brought against Barton Mallow, and you can characterize the evidence, you can characterize the arguments as being torts, but the fact is the arbitrators were asked to decide a breach of contract claim, and they were to decide whether Barton Mallow was responsible under his contract for the design. But it's almost like you're saying there was a breach of contract claim. The claim involved torts, but they were only ruling on the breach of contract aspect of it. So same facts, same theories, same everything, but the cause of action would be different so we get a do-over. So what am I missing? We're suing a different party under a different legal theory, and it's not the rule, I think in just litigation generally, that you're only allowed to bring a claim against one of many responsible parties. There are multiple parties here, and O'Neill was severely limited both procedurally and how it presented its claims in arbitration, and it didn't have a jury trial like it wanted,  Apart from not having a jury, I get that. How were you severely limited in the context of these tort claims? Well, there's the consequential damages waiver, and O'Neill wanted to have that opportunity to ask a jury. Thomas says the arbitration award specifically rejected consequential damages. I believe, yeah, the arbitrators, they found factually that it wasn't presented after determining that, and I don't know if you characterize that as dicta, but they determined that the consequential damages provision applied, but O'Neill was deprived of its opportunity if we were to let the rest, it would be denied of its opportunity to present a jury, to a jury, as the trier of fact of consequential damages and have a jury determine whether there's such a claim. So you say you had a constitutional right. You were deprived of that constitutional right. I get that. Obviously, people can waive constitutional rights. Indeed. So why isn't that what essentially occurs when you enter into an agreement that provides for arbitration with one party, and that contract incorporates other contracts? That seems to be how we get to that. I don't think it's ever been argued, and certainly our reading of the contract wasn't, it didn't mean that we were to be required to be bound by an arbitration clause to present claims in arbitration against other parties. I don't think that was ever raised or contemplated by the contract, and it's certainly not our interpretation of it. So it simply doesn't require, and I think we heard from other counsel, we weren't required to assert a claim in arbitration against either of those two parties. Anything else? Okay, thank you, counsel. Thank you. The case will be submitted.